## IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN
## GREEN BAY DIVISION

TRACY JETT,

      Plaintiff,

v.

SPIRIT CONSTRUCTION SERVICES, INC.,

      Defendant.

Case No.

***JURY TRIAL DEMANDED***

## COMPLAINT

NOW COMES Plaintiff, TRACY JETT, by and through his attorneys, and for his cause of action against Defendant, SPIRIT CONSTRUCTION SERVICES, INC., states as follows:

## INTRODUCTION

This is a civil rights action brought pursuant to 42 U.S.C. § 2000e, *et seq.* (Title VII of the Civil Rights Act of 1964 as amended) in order to recover damages against Defendant, SPIRIT CONSTRUCTION SERVCES, INC. (hereafter "SPIRIT"), for the unlawful discriminatory employment practices to which Plaintiff, TRACEY JETT (hereafter "PLAINTIFF") has been subjected. PLAINTIFF has suffered damages on account of disparate treatment based on his race and retaliation.

This lawsuit also alleges *respondeat superior* derivative liability and failure to supervise direct liability against SPIRIT, stemming from the facts discussed *infra*.

## JURISDICTION

1. Jurisdiction and venue of this Court are invoked pursuant to 42 U.S.C. § 2000e-5(f)(3) and 28 U.S.C. §§ 1331 and 1391. Employment records relevant to the unlawful

employment practices committed against PLAINTIFF are maintained and administered in Green Bay (Brown Co.), Wisconsin, which is within this judicial district.

## PARTIES

2. At all relevant times, PLAINTIFF was and is a citizen of the United States of America, and he is therefore entitled to all legal and constitutional rights afforded citizens of the United States of America. As a Black person of African American heritage, PLAINTIFF is a member of a class protected by Title VII. At all relevant times, PLAINTIFF was an employee who worked for SPIRIT.

3. On November 25, 2025, PLAINTIFF filed a charge of workplace race discrimination and retaliation with the Equal Employment Opportunity Commission ("EEOC"). On March 3, 2026, the EEOC issued PLAINTIFF a Determination and Notice of Rights—or "Right to Sue" letter—a copy of which is attached hereto as Exhibit A.

4. The instant federal lawsuit was filed within the requisite ninety (90) days of the issuance of the EEOC's "Right to Sue" letter pertaining to PLAINTIFF's charge.

5. Title VII defines an employer as "a person engaged in an industry affecting commerce who has fifteen or more employees…and any agent of such person…" 42 U.S.C. § 2000e(b). An individual qualifies as an "employer" under Title VII if he or she serves in a supervisory position and exercises significant control over a plaintiff's hiring, firing or conditions of employment. See, e.g., *Garcia v. Elf Atochem North America*, 28 F.3d 446 (5th Cir. 1994); *Paronline v. Unisys Corp.*, 879 F.2d 100 (4th Cir. 1989).

6. At all relevant times, SPIRIT was an industrial construction firm established in 1989, specializing in pulp and paper industry projects, steel fabrication, and mechanical installations. SPIRIT provides various industrial services, including civil construction, structural

2

steel erection, piping, rigging, and machine installation. At all relevant times, SPIRIT was headquartered in Green Bay, Wisconsin and did business, including construction projects, in the State of Arkansas.

7. SPIRIT is an "employer" within the meaning of 42 U.S.C. § 2000e(b) and an organization of greater than fifteen (15) employees that receives federal funding. At all relevant times, SPIRIT was PLAINTIFF's employer.

8. At all relevant times, PLAINTIFF's employment records, which are pertinent to this lawsuit, were maintained and administered by SPIRIT's primary administrator's office for records which is located at 3131 Market Street, Green Bay, Wisconsin 54304.

9. At all relevant times, Nelson Morales (hereafter "Mr. Morales") was an employee, agent and/or servant of SPIRIT, occupying the role of superintendent. At all relevant times, Mr. Morales supervised PLAINTIFF and other SPIRIT employees on construction projects in the State of Arkansas, including at the location of 6401 Thibault Road, Little Rock, Arkansas.

## PERTINENT FACTS

10. On June 25, 2025, PLAINTIFF began working at SPIRIT as a millwright, which is a specialized, highly skilled tradesperson who installs, maintains and repairs precision heavy industrial machinery and equipment, often on construction sites. On that date, PLAINTIFF began a construction project with Mr. Morales, who was a SPIRIT superintendent and PLAINTIFF's immediate supervisor.

11. Upon information and belief, Mr. Morales is of Latino heritage and is bilingual. Overwhelmingly, SPIRIT employees working at projects with PLAINTIFF were individuals of Latino heritage who were either bilingual speakers of English and Spanish or exclusively Spanish-speaking.

12. From the very start, literally on his first day of employment at SPIRIT, PLAINTIFF was the target of repeated racially hostile comments and race-based ridicule delivered by Mr. Morales.

13. Indeed, on that date, June 25, 2025, just a few minutes after meeting PLAINTIFF, Mr. Morales told him that when he saw PLAINTIFF's car in the employee parking lot, he "knew it was a black guy" that the company hired.

14. In early July 2025, during PLAINTIFF's second week at SPIRIT, Mr. Morales noticed PLAINTIFF's open work toolbox and visually examined the tools inside. Mr. Morales was apparently impressed with quality and variety of PLAINTIFF's tools, prompting him to concede to PLAINTIFF "yeah, they're expensive" before adding "…what did you do, steal them?"

15. Mr. Morales' inappropriate comments continued unabated. During PLAINTIFF's third week of work, out of nowhere, Mr. Morales asked PLAINTIFF if he was "the nice black type or the mean black type." PLAINTIFF, stunned by his supervisor's statement, did not respond.

16. In mid-July 2025, Mr. Morales told PLAINTIFF that his grandmother "is as black as" PLAINTIFF," adding that she "looked like the lady on the syrup bottle, the pancake lady." Understanding at this point the apparent clout enjoyed by Mr. Morales at SPIRIT, PLAINTIFF did his best to ignore these inappropriate comments and continued to focus on his work.

17. At every opportunity, Mr. Morales sought to harass or exclude PLAINTIFF. For instance, as superintendent, it was Mr. Morales' responsibility to conduct daily project meetings for SPIRIT employees. These daily meetings are essential for assuring employee safety, minimizing workplace injuries and efficient project stewardship. Knowing that PLAINTIFF did

4

not understand Spanish, Mr. Morales would speak Spanish while running these meeting without any translation to English so that PLAINTIFF could understand what was being said.

18. Additionally, during 2025's hot summer months, Mr. Morales would order PLAINTIFF to work outside in temperatures that were clearly unsafe, especially given the strenuous type of work millwrighting on construction sites demands. On August 11, 2025, with the temperature in Arkansas over 90°, Mr. Morales ordered PLAINTIFF to work outdoors, causing him to collapse from heat exhaustion. PLAINTIFF required emergency medical treatment and, upon discharge, he was kept home from work for about two weeks per doctor's orders.

19. Upon PLAINTIFF's return to SPIRIT, Mr. Morales' racially hostile comments and race-based ridicule continued. On August 8, 2025, Mr. Morales said to PLAINTIFF "you are black but I'm blacker than you," which PLAINTIFF understood as meaning that PLAINTIFF was not a stereotypical African American in Mr. Morales' opinion and/or that PLAINTIFF cannot handle extreme heat like Mr. Morales believes a black person should.

20. Mr. Morales' race-based harassment of PLAINTIFF continued and escalated throughout September and October 2025, culminating in a physical assault on October 22, 2025.

21. On that date, October 22, 2025, as PLAINTIFF was busy working, crouched over on his hands and knees while installing thread into concrete, Mr. Morales approached him from behind and, with his steel-toed boots, proceeded to kick PLAINTIFF in his buttocks.

22. PLAINTIFF was absolutely shocked by this act of physical battery and, though he was infuriated and humiliated by what Mr. Morales had done to him, he feared retribution so he did his best to maintain his composure and continue working.

5

23. For the remainder of that day, the gravity of Mr. Morales' egregious act began to heavily weigh on PLAINTIFF, causing him increasingly to experience consternation, anger, fear, frustration, humiliation and depression. As PLAINTIFF was preparing to punch out and leave work on October 22, Mr. Morales approached him and a white coworker nearby and touched each of their hands, one after the other. MORALES then looked up at both of them and said to PLAINTIFF, "you see, she is white and when it is cold, you turn like her…all people get ashy, it just shows up more on a black person."

24. On the following day, October 23, 2025, PLAINTIFF reported Mr. Morales' physical assault to SPIRIT's head safety coordinator for the project who told PLAINTIFF to write out a formal statement about the incident, which PLAINTIFF agreed to do.

25. The head safety coordinator told PLAINTIFF that, furthermore, he would discuss the matter with supervisors on SPIRIT's higher management team. He assured PLAINTIFF that Mr. Morales would be removed from the project once SPIRIT received PLAINTIFF's statement.

26. Engaging in workplace violence and/or horseplay by employees is purportedly strictly forbidden by SPIRIT because it presents an unreasonable risk of serious injury and death. For this reason, there is purportedly a zero tolerance policy at SPIRIT for this type of workplace misconduct.

27. PLAINTIFF submitted his statement about Mr. Morales' physical assault to SPIRIT the next day, on October 24, 2025. Moreover, PLAINTIFF reported to SPIRIT supervisors that he had been the target of Mr. Morales' racial hostility and race-based ridicule for many weeks prior to the physical assault.

28. On October 31, 2025, PLAINTIFF texted SPIRIT Human Resources Department, complaining about Mr. Morales' long pattern of race-based misconduct. SPIRIT purportedly

investigated the incident of Mr. Morales' physical assault of PLAINTIFF. Mr. Morales was not disciplined, and PLAINTIFF was later told by SPIRIT, through its employees, servants and/or agents, that Mr. Morales was "just messing around."

29. On November 7, 2025, two (2) weeks after his formal statement, and just eight (8) days after submitting his text message regarding Mr. Morales' misconduct to SPIRIT, PLAINTIFF was told that SPIRIT had no work for him and he would be laid off indefinitely.

<u>**PLAINTIFF'S ALLEGATIONS**</u>

**COUNT I—RACE DISCRIMINATION
SPIRIT**

30. PLAINTIFF hereby incorporates and re-alleges all preceding Paragraphs as though fully alleged in Count I.

31. Title VII of the Civil Rights Act of 1964 is a federal law that prohibits employers from discriminating against employees on the basis of their African American race.

32. PLAINTIFF was discriminated against by virtue of his race.

33. A plaintiff may prove intentional discrimination using either direct or circumstantial evidence. Evidence is "direct" if it establishes a specific link between the alleged discriminatory animus and the challenged decision, sufficient to support a finding by a reasonable fact finder that an illegitimate criterion actually motivated the employer's decision.

34. If the plaintiff lacks direct evidence that clearly points to the presence of an illegal motive, he must create the requisite inference of unlawful discrimination through the *McDonnell Douglas* analysis.

35. Regarding the *McDonnell Douglas* analysis, an employer's past discriminatory policy and practices may show that its proffered reasons for disparate treatment are pretextual are may thus be admissible.

7

36. Because of PLAINTIFF's complaints to management about racial hostilities in the workplace and a generally hostile work environment, SPIRIT subjected him to a hostile work environment, which included discouragement, harassment, coarse language, threats of involuntary transfers, relocation and constructive termination. PLAINTIFF was forced to work in an environment that tolerates and condones racist conduct, and protects those guilty of exhibiting racist conduct and making racist statements.

37. PLAINTIFF was denied benefits, promotions, preferred positions and desired transfers that were given to white employees, and PLAINTIFF was subjected to disparate treatment on account of his race. This disparate treatment was in violation of Title VII of the Civil Rights Act of 1964 (as amended).

38. SPIRIT has engaged in intentional discrimination and acted with malice or reckless indifference to the federally protected rights of PLAINTIFF. SPIRIT discriminated against PLAINTIFF in the face of perceived risk that its actions would violate federal law.

39. The deprivation of PLAINTIFF's constitutional rights which was committed by SPIRIT and its agents was unnecessary, unreasonable and willfully malicious. Therefore, SPIRIT is liable in damages to PLAINTIFF, including compensatory damages, actual damages, punitive damages, costs and attorney's fees.

## COUNT II—RETALIATION
### SPIRIT

40. PLAINTIFF hereby incorporates and re-alleges all preceding Paragraphs as though fully alleged in Count II.

41. PLAINTIFF alleges SPIRIT by and through its supervisory agents committed retaliatory acts which targeted PLAINTIFF for engaging in statutorily protected conduct.

8

42. To establish a *prima facie* claim for retaliation claim under Title VII, a plaintiff must show that (1) he engaged in statutorily protected activity; (2) he suffered an adverse employment action, and (3) there was a causal connection between the adverse employment action and the protected activity.

43. It is unlawful to retaliate against an employee for reporting a comment regarding workplace racism and/or employment discrimination. It is unlawful to retaliate against an employee for communicating with a supervisor or manager about workplace racism and/or employment discrimination.

44. An employee has engaged in activity protected by Title VII if he has either (1) opposed any practice made an unlawful employment practice by Title VII or (2) made a charge, testified or participated in any way in a Title VII investigation, hearing or proceeding.

45. Reporting workplace discrimination clearly qualifies as protected activity and Title VII forbids employer retaliation against employees who complain about racism. Informal complaints about race discrimination constitute protected activity.

46. PLAINTIFF engaged in protected conduct on or about October 24, 2025 when he reported the violence and race-based harassment suffered at the figurative hands—and literal foot—of Mr. Morales, including his October 22, 2025 physical assault of PLAINTIFF.

47. SPIRIT failed to appropriately discipline Mr. Morales. Instead, SPIRIT, by and through its supervisory agents, retaliated against PLAINTIFF by engaging in adverse employment actions—including his actual or effective termination—which was impermissible and which serves to condone and ratify Mr. Morales' misconduct.

48. The deprivation of PLAINTIFF's constitutional rights which was committed by SPIRIT, by and through its supervisory agents, was unnecessary, unreasonable and willfully

9

malicious. Therefore, SPIRIT is liable in damages to PLAINTIFF, including compensatory damages, actual damages, punitive damages, costs and attorney's fees.

## COUNT III—TORT OF ASSAULT AND BATTERY
### SPIRIT

49. PLAINTIFF hereby incorporates and re-alleges all preceding Paragraphs as though fully alleged in Count III.

50. Assault is defined in Arkansas as an intentional attempt by a person, by force or violence, to do an injury to the person of another, or as any attempt to commit a battery, or any threatening gesture showing in itself or by words accompanying it an immediate intention, coupled with a present ability, to commit a battery.

51. Battery is defined in Arkansas as a wrongful or offensive physical contact with another through intentional contact by the tortfeasor and without the consent of the victim, the unpermitted application of trauma by one person upon the body of another person.

52. In October 2025, and at all relevant times, Mr. Morales was an employee, agent and/or servant of SPIRIT and, as such, SPIRIT was responsible for the actions of Mr. Morales, which are performed in the course of his employment duties and committed in the workplace.

53. On October 22, 2025, Mr. Morales, while serving as a superintendent and SPIRIT supervisory employee, committed assault and battery upon PLAINTIFF.

54. SPIRIT, by and through its agents, servants and/or employees, including Mr. Morales, was guilty of one more of the following torts, wrongful and/or neglectful acts against PLAINTIFF: a) assault; and b) battery.

55. Therefore, SPIRIT is liable in damages to PLAINTIFF, including compensatory damages, actual damages, punitive damages, costs and attorney's fees.

10

WHEREFORE, PLAINTIFF prays for judgment against SPIRIT in an amount which will fully and fairly compensate him for the damages he suffered.

## COUNT IV—FAILURE TO SUPERVISE
## SPIRIT

56. PLAINTIFF hereby incorporates and re-alleges all preceding Paragraphs as though fully alleged in Count IV.

57. The assault and battery, harassment and retaliation, *inter alia*, suffered by PLAINTIFF was the culmination of a continuing pattern of racial animus, racist comments and other workplace misconduct, all of which were known to SPIRIT prior to October 22, 2025, and at all relevant times.

58. On October 22, 2025, and at all relevant times, SPIRIT: 1) clothed Mr. Morales, and other SPIRIT supervisors, in the authority to act on behalf of SPIRIT; and 2) retained the right of control over Mr. Morales, and other SPIRIT supervisors, so that an agency-principal relationship existed.

59. As such, there existed a duty on SPIRIT to ensure that its supervisors, including Mr. Morales, were properly supervised while performing their duties on behalf of SPIRIT.

60. Despite this duty, SPIRIT committed the following wrongful and neglectful acts and/or omissions:

    a)     failed to appropriately supervise its employees, including Mr. Morales;

    b)     failed to appropriately discipline its employees, including Mr. Morales; and

    c)     failed to enforce SPIRIT's policies rules and to prevent workplace violence and racial hostility.

11

61. Therefore, SPIRIT is directly liable in damages to PLAINTIFF, including compensatory damages, actual damages, punitive damages, costs and attorney's fees.

WHEREFORE, PLAINTIFF prays for judgment against SPIRIT in an amount which will fully and fairly compensate him for the damages he suffered.

## PRAYER FOR RELIEF

Plaintiff, TRACY JETT, by and through his attorneys, requests judgment against the Defendant, SPIRIT CONSTRUCTION SERVICES, INC., and seeks the following relief for the unlawful employment practices and tortious conduct described above:

1. That the Court order promotion or reinstatement of PLAINTIFF, as applicable;

2. That Defendant be required to pay PLAINTIFF's compensatory damages, including illegally withheld pay, back pay, lost wages and emotional damages;

3. That Defendant be required to pay actual damages, and punitive damages;

4. That Defendant be required to pay costs and attorney fees per 42 U.S.C. § 1988; and

5. That PLAINTIFF receive any other equitable, legal and just relief as this Honorable Court deems appropriate.

Respectfully submitted,

/s/Michael J. Laux
Michael J. Laux
Wisconsin Bar No. 1044280
One of the Attorneys for PLAINTIFF
400 W. Capitol Avenue, Suite 1700
Little Rock, AR 72201
Telephone: (501) 242-0750
Facsimile: (501) 372-3482
E-mail: mlaux@lauxlawgroup.com
mikelaux@icloud.com

12